

**NUMBER 13-07-00236-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **KELLY RAY MITCHELL,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the Criminal District Court
of Jefferson County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

After a jury trial, appellant, Kelly Ray Mitchell, was convicted of indecency with a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003). The jury assessed punishment at seventeen years' confinement. In three issues, Mitchell contends that: (1) the trial court erred in admitting the testimony of an outcry witness; (2) he received ineffective assistance of counsel; and (3) the trial court erred by failing to grant

him a new trial because of alleged prosecutorial misconduct.[1]  We affirm.

## I. BACKGROUND

On October 12, 2003, eleven-year-old S.S. told her mother, L.M., that she had been inappropriately touched by her former stepfather, Mitchell.  After their conversation, L.M. and S.S. went to the police station and reported the allegations.  An investigation ensued, and on November 20, 2003, Mitchell was charged by indictment with the offense of indecency with a child.  On January 31, 2007, Mitchell entered a plea of not guilty and proceeded to trial by jury.

At the trial, S.S. testified that her mother and Mitchell married when S.S. was young and, though they divorced when she was six years old, she continued to recognize him as a father figure.  For five years following the divorce, S.S. maintained a relationship with Mitchell that consisted of visiting him on weekends six to twelve times a year.  S.S. testified that during these visits Mitchell would bathe her and take baths with her.  S.S. testified that on occasion she would visit Mitchell when his wife and step-children were away from the house.  During these visits, she and Mitchell would sleep in his bed together, and neither would wear clothes.  S.S. testified that Mitchell would place his penis on her vagina and take pictures.  On several occasions, Mitchell would show S.S. pornographic magazines, instruct her to pose like the women in the magazines, and take pictures of S.S. in various

---

[1] After Mitchell's counsel filed a brief on his behalf, counsel also filed a motion to withdraw.  This motion was never granted. Despite never filing a motion for leave to file a pro se brief, Mitchell filed a pro se motion for an extension of time to file a brief.  We granted the motion on June 12, 2008.  On June 23, 2008, Mitchell filed a second motion for an extension, which we granted on July 10, 2008.  On July 21, 2008, Mitchell filed an "Amended and Supplemental Brief" in which he amended one point of error and raised four additional points.  Mitchell does not have the right to hybrid representation.  *Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004) (holding that a party neither has a right to hybrid representation nor a constitutional right to represent himself on direct appeal); *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981); *contra Ford v. State*, 870 S.W.2d 155, 157 (Tex. App.–San Antonio 1993, pet. ref'd).  In *Ford*, the San Antonio Court of Appeals considered arguments made in appellant's pro se brief after recognizing that they had previously granted his motion for leave to file a pro se brief.  *Ford*, 870 S.W.2d at 157.  In light of Mitchell's failure to file a motion for leave to file a pro se brief, we find the present case distinguishable from *Ford* and adhere to the general rule of considering only the points raised in Mitchell's original brief.  *See Scheanette*, 144 S.W.3d at 505 n.2; *Rudd*, 616 S.W.2d at 625.  Thus, we will not address any of Mitchell's pro se points.

poses. S.S. further testified that on one occasion, Mitchell put honey on his penis and asked her to put it in her mouth so that he could take a picture, but she refused. She testified that when she was eight or nine she began to realize that what Mitchell was doing was inappropriate. According to S.S., Mitchell told her not to tell anyone about the things they did together and "that it would just be a father-daughter secret." S.S. testified that she did not tell anyone until she told her mother, L.M.

L.M. testified that on October 12, 2003, she noticed a pornographic movie out of place in her home and suspected that S.S. had viewed it. L.M. spoke to S.S. about the inappropriateness of an eleven-year-old viewing such videos. L.M. then spoke to S.S. about men and relationships, and told S.S. that sometimes older men take advantage of younger women. Upon hearing this statement, S.S. looked as if she was ashamed and stared at the ground. L.M. then asked, "has someone been touching you?" L.M. testified S.S. told her that she and Mitchell had bathed together and that Mitchell had taken pictures of her. S.S. also told L.M. that Mitchell would pose her like women in pornographic magazines, or put his penis on her vagina, and take pictures. L.M. testified that after their conversation, she took S.S. to the police department to relay the information.

The defense's case consisted of testimony from Mitchell, as well as six additional defense witnesses. Mitchell's ex-wife, Latisha Hamilton, testified that she did not believe that the incidents S.S. alleged had taken place, and that she thought that S.S. made them up. Three rebuttal witnesses were called by the State.

On rebuttal, S.S.'s counselor, Christi Lawdermilk, testified without objection as to statements made to her by S.S. during counseling sessions in the two years following the outcry to L.M. On February 5, 2007, the jury returned a guilty verdict and sentenced Mitchell to seventeen years' imprisonment. This appeal followed.

## II. Outcry Testimony

In his first issue, Mitchell asserts that the trial court erred by admitting outcry testimony in violation of article 38.072 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Specifically, Mitchell argues that: (1) the trial court erred by admitting the outcry testimony of S.S.'s mother, L.M., without conducting a proper reliability hearing as to the statements; and (2) such error was harmful.

### A.    Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). A trial court's decision will be upheld unless it lies outside the "zone of reasonable disagreement." *Id.*

Article 38.072 of the Texas Code of Criminal Procedure[2] provides a hearsay exception permitting the State to introduce statements made by a child against whom an

---

[2] Article 38.072 provides as follows, in pertinent part:
Sec. 1. This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child 12 years of age or younger:
    (1) Chapter 21 (Sexual Offenses)
    . . . .
Sec. 2.
(a) This article applies only to statements that describe the alleged offense that:
    (1) were made by the child against whom the offense was allegedly committed; and
    (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.
(b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if
    . . . .
    (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and
    (3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.
Tex. Code Crim. Proc. Ann. art. 38.072.

offense was allegedly committed and describes the proper outcry witness as "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2). Once a hearsay objection has been raised to such testimony, the burden shifts to the State, as the proponent of the hearsay evidence, to establish compliance with article 38.072. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990); *Mosley v. State*, 960 S.W.2d 200, 203 (Tex. App.–Corpus Christi 1997, no pet.).

The determination of the admissibility of an outcry statement is left to the broad discretion of the trial court, and the trial court's findings will be upheld so long as they are supported by the record. *Castelan v. State*, 54 S.W.3d 469, 475 (Tex. App.–Corpus Christi 2001, no pet.) (citing *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (en banc)). If an appellate court determines that the trial court abused its discretion in admitting such testimony, the appellate court conducts a rule 44.2(b) harm analysis. *See West v. State*, 121 S.W.3d 95, 104 (Tex. App.–Fort Worth 2003, pet. ref'd) (citing TEX. R. APP. P. 44.2; *Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.–Texarkana 2003, no pet.); *Broderick v. State*, 35 S.W.3d 67, 73-74 (Tex. App.–Texarkana 2000, pet. ref'd)). We deem the error harmless if, after reviewing the record, we are reasonably assured the error did not influence the jury's verdict or had only a slight effect. *Id.* (citing *Josey*, 97 S.W.3d at 698). If the same or similar evidence is admitted without objection at another point during the trial, the improper admission of the evidence will not constitute reversible error. *Id.* at 104-05.

**B.      Analysis**

Mitchell claims that the court erred in allowing L.M. to testify as to S.S.'s out-of-court statements. During L.M.'s testimony, Mitchell made a hearsay objection in response to the State's offer of testimony about the statements S.S. made to L.M. on October 12, 2003. The trial court called the attorneys to the bench; however, the discussion between the trial court and attorneys does not appear in the record. After the bench conference, Mitchell requested a ruling on the record. The trial court overruled the hearsay objection, and L.M. continued her testimony. After both attorneys finished questioning L.M., the judge announced that the court would take a fifteen minute recess. After the jury exited the courtroom, the court made the following statement:

> The record shall reflect the jury has exited the courtroom. I'm going to place into the record some findings at this time concerning the testimony of the last witness, and this is in relation to the objection made for hearsay by [Mitchell]. I'm making a finding that the statements related by this last witness concerning statements to her from [S.S.], her daughter, are statements made by a child victim to the witness . . . L.M., who was at the time 18 years of age or older and was not the defendant; that the child, [S.S.] has testified in this case and is available for further testimony; and that the statements related by the witness described conduct as alleged in the indictment in a discernible way.

> Also, it's my understanding that [the State] showed to the Court evidence that he had given prior notice of the use of that witness as an outcry witness to the defense timely, prior to trial.

Mitchell argues that the trial court failed to comply with article 38.072 of the Texas Code of Criminal Procedure by failing to conduct a hearing outside the presence of the jury to determine that the outcry statement is reliable based on the time, content, and circumstances of the statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). In the present case, we find that the trial court conducted a hearing at the bench following Mitchell's objection. The trial court's statement detailing its findings confirms that when the

6

court requested the attorneys to approach the bench, an article 38.072 hearing was held. This bench conference was sufficient to meet the requirements of article 38.072. *See Zarco v. State*, 210 S.W.3d 816, 831 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (finding a hearing at the bench following defendant's hearsay objection sufficient to meet the requirements of article 38.072).

Additionally, Mitchell argues that the trial court erred because it did not find "that the statement [was] reliable based on the time, content, and circumstances of the statement." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). "After conducting a reliability hearing a trial judge is not required to enter written findings regarding the reliability of an outcry, but the judge may impliedly find the testimony reliable by overruling a defendant's objections to the evidence and holding that the testimony is admissible." *Gabriel v. State*, 973 S.W.2d 715, 718 (Tex. App.–Waco 1998, no pet.) (citing *Villalon v. State*, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990)). In the present case, even though the trial court's findings do not specifically state that the testimony is "reliable," by overruling the objection after holding a reliability hearing, the trial court impliedly found the testimony reliable. *See Gabriel*, 973 S.W.2d at 718. Since all of the requirements of article 38.072 of the Texas Code of Criminal Procedure were met, the trial court did not abuse its discretion in admitting the outcry testimony of L.M.. Mitchell's first issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Mitchell contends that he received ineffective assistance of counsel because his trial counsel failed to object when S.S.'s counselor, Lawdermilk, allegedly gave hearsay testimony and commented on the truthfulness of S.S.

## A. Standard of Review

Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be judged by hindsight. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). To prove ineffective assistance of counsel, Mitchell must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). A failure to make a showing under either prong of the *Strickland* standard defeats a claim of ineffective assistance of counsel. *Rylander*, 101 S.W.3d at 110-11.

Mitchell must prove ineffective assistance by a preponderance of the evidence and must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or might reasonably be considered sound trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Jaynes*, 216 S.W.3d at 851. Allegations of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110-11. Likewise, without evidence of counsel's trial strategy, the reviewing court will presume sound trial strategy. *Thompson*,

8

9 S.W.3d at 814; *see also Rylander*, 101 S.W.3d at 111.

**B.**   **Analysis**

Mitchell asserts that his trial counsel was ineffective for failing to object to the rebuttal testimony of Lawdermilk.   Specifically, Mitchell argues that his attorney was ineffective for failing to object to the following:

| [State's Counsel]: | Tell us, based on your interviews that began in November 2003 with [S.S], what her symptoms were that she had brought to you. |
| --- | --- |
| [Laudermilk]: | Okay.  Throughout many different sessions with [S.S.] we talked about many different feelings that she had about the sexual abuse.  She felt very guilty.  She felt guilty that she had basically, you know—this had gone on for some time, and she hadn't told anybody.  She was very confused about what had happened.  She told me that in the first few years that it started happening, she didn't understand that it was wrong.  She actually told me that it felt good.  So, she was very confused about that.  So, like I said, she had a lot of guilt.  She was very sad.  She was also very angry about what had happened. |

. . . .

| Q: | Did she tell you—did she mention at some point in your meeting with her when she began to realize that what was going on with her—what was happening to her was wrong? |
| --- | --- |

. . . .

| A: | . . . She stated that she realized the sexual abuse was wrong approximately two years ago. |
| --- | --- |

. . . .

| Q: | And were the details that she shared with you always |
| --- | --- |

9

> consistent with the details that were reported to you in the initial intake?
>
> A: Yes, they were. . . . She told me that her stepfather had asked her to put her mouth on his penis, and he also asked if he could put his mouth on her vagina. She did report that she said no to this and that it did not happen.
>
> Q: In connection with that session, did she characterize Kelly Mitchell, her reported abuser?
>
> A: Yes, she did. She talked about basically how she was tricked by Kelly; that, you know, the abuse would happen when no one else was there; he told her that it was the right thing to do, there was nothing wrong with what was happening; he told her not to tell anybody and that it was their little secret.

Mitchell asserts that his trial counsel should have objected because Lawdermilk's statements were hearsay and commented on the truthfulness of S.S. The State asserts that Lawdermilk's testimony on the veracity of S.S. was not hearsay because it was offered during rebuttal to rehabilitate S.S. after her character for truthfulness was attacked.

Every witness is assumed to have a truthful character; if, however, his character for truthfulness is attacked, he may present evidence of his good character. See Tex. R. Evid. 608(a); *Michael v. State*, 235 S.W.3d 723, 725 (Tex. Crim. App. 2007). During Mitchell's case-in-chief, Mitchell's ex-wife, Latisha Hamilton, was questioned as follows:

> [Defense Counsel]: Well, are you telling us and this jury that you think [S.S.] made all this up?
>
> [Hamilton]: Yes. That's exactly what I'm saying.
>
> Q: Why would she make this up?
>
> A: I mean, it could have happened to her; but it was not

10

Kelly Mitchell that did it.

Q:              Okay.  How do you know that?

A:              Because I've lived with the man.  I mean, I was married to him.  I mean, I know how he acts, I know how he interacts with other people and kids and other people's kids, and I've seen him with her; and it just never could have happened.

The testimony of Hamilton specifically impeached the accuracy of the testimony given by S.S. earlier in the trial.  *See Michael*, 235 S.W.3d*.* at 726 (noting that "[s]pecific impeachment is an attack on the accuracy of the specific testimony (i.e., the witness normally may be a truthteller, but she is wrong about X)").  When a witness's character for truthfulness has been attacked, she may be rehabilitated by presenting testimony of her character for truthfulness.  *See id.* at 726.  To the extent that Lawdermilk's testimony presents evidence of S.S.'s veracity, we agree with the State that the testimony does not constitute hearsay.  However, much of Lawdermilk's testimony seems to go beyond merely rehabilitating S.S.'s character for truthfulness, and therefore arguably constitutes hearsay.

Mitchell contends that his counsel's failure to object to hearsay constitutes enough evidence to prove that his counsel's performance fell below an objective standard of reasonableness.  Mitchell contends that his counsel was not acting in accordance with a viable trial strategy when he failed to object to hearsay statements made by Lawdermilk.  However, "'trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'"  *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)).  Absent such an opportunity, we do not find deficient performance unless the

11

challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). We do not find it necessary to address this contention, because even if failing to object to hearsay was not a viable trial strategy, Mitchell fails to meet the second prong of *Strickland*.

Even if counsel should have objected to Lawdermilk's testimony, we note that her testimony was cumulative of other evidence properly introduced, and its introduction arguably harmless. *Braughton v. State*, 749 S.W.2d 528, 532 (Tex. App.–Corpus Christi 1988, pet. ref'd). Mitchell has not demonstrated that he suffered any prejudice by showing that the result of the trial probably would have been different had his trial counsel objected to Lawdermilk's testimony concerning the statements made by S.S. It is hard to imagine, in light of all of the other evidence presented at trial, how Mitchell would have been prejudiced in this regard when similar testimony was given by both S.S. and L.M. *See id.* Accordingly, we conclude that Mitchell has failed to establish his ineffective assistance claim, and overrule his second issue.

## IV. PROSECUTORIAL MISCONDUCT

In his final issue, Mitchell complains of prosecutorial misconduct during the guilt/innocence phase of trial. Specifically, Mitchell complains that misconduct occurred when the State sought to have photographs of S.S. admitted into evidence. While seeking to authenticate the photographs, the prosecutor asked L.M. whether the photographs depicted S.S. from the time L.M. and Mitchell met "up until the time the abuse stopped . . . ." Mitchell's counsel objected and asked for a limiting instruction. The trial court

12

sustained the objection and instructed the jury to disregard the statement "until the time the abuse stopped." Mitchell's counsel requested a mistrial, which the trial court denied.

## A.     Standard of Review and Applicable Law

When the trial court sustains an objection and instructs the jury to disregard, but denies the defendant's motion for a mistrial, the issue becomes whether the trial court abused its discretion in denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). A trial court's ruling is upheld if it was within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). In determining whether the trial court abused its discretion, we consider: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's misconduct); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam). Generally, we presume the jury follows the trial court's instructions and that a limiting instruction cures any harm. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994).

## B.     Analysis

Mitchell contends that the prosecutor's conduct "called for a testifying witness to provide an answer that in effect commented on the truthfulness of the complainant and presumed [his] guilt." We do not agree with Mitchell's contention that the trial court's instruction to disregard was insufficient to cure any error. We find that the prosecutor's conduct was not severe. The question occurred in the context of the authentication of photographs, and while the comment was inappropriate, Mitchell's counsel objected to the question, and the trial court promptly instructed the jury to disregard the statement. We presume the jury followed the trial court's instructions. *See id.* In sustaining Mitchell's objection and instructing the jury, the trial court sufficiently cured any potential harm. *See Archie*, 221 S.W.3d at 700. Additionally, because the record includes testimony from S.S. that details the instances of alleged sexual misconduct, we find it likely that the jury would have found Mitchell guilty regardless of the State's comment. *See id.* Considering all three factors, we hold that the trial court did not abuse its discretion in denying Mitchell's motion for mistrial. We overrule his final issue.

## V. Conclusion

Having overruled all of Mitchell's issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do Not Publish. Tex. R. App. P. 47.2(b)
Memorandum Opinion delivered and
filed this the11th day of June, 2009.

14