Eric Paul MICHAEL, Appellant,

v.

The STATE of Texas, State.

No. 2–04–207–CR.

Court of Appeals of Texas,
Fort Worth.

July 14, 2005.

Rehearing Overruled Aug. 18, 2005.

Adam L. Seidel, Dallas, for Appellant.

Tim Curry, Criminal District Atty., Charles M. Mallin, Asst. Criminal District Atty. and Chief of Appellate Section,

James E. Cook, Lisa Callaghan, and Shannon Estrada, Asst. Criminal District Atty., Fort Worth, for Appellee.

Panel B: HOLMAN, GARDNER, and McCOY, JJ.

## MEMORANDUM OPINION[1]

BOB McCOY, Justice.

### I. Introduction

Appellant, Eric Paul Michael ("Michael"), appeals from his convictions for aggravated sexual assault and indecency with a child. In his sole point on appeal, Michael contends that the trial court abused its discretion when it allowed the State to bolster the credibility of its essential witness. We affirm.

### II. Background Facts and Procedural History

At the time of the alleged incident, the complainant, H.R., was spending the night in Michael's home as a guest of his two daughters. H.R. and Michael's two daughters slept in a small guestroom on a pallet of sleeping bags. H.R. testified that she awoke at 1:00 a.m. to find Michael kneeling beside her and "touching himself." She testified that he was not wearing a shirt and that his shorts were pulled down. She indicated that she had been sleeping on her right side but that Michael had rolled her over onto her back. She stated that he then moved to her feet, pulled down her shorts, and began licking her "vagina" [sic]. She testified that after five or ten minutes he stopped, pulled up her shorts, said "thank-you," and left the room.

H.R. did not tell anyone of this incident until several months later, when after watching an episode of "The Practice" she told her mother. The next day, H.R.'s mother called Child Protective Services and took her daughter to the Grapevine police department where they filed a report. H.R. then gave a videotaped interview. During cross-examination of H.R., Michael's defense counsel brought out discrepancies between H.R.'s testimony at trial and the videotaped interview. In rebuttal, the State called H.R.'s former second grade teacher to offer testimony as to H.R.'s character for truthfulness. Michael's defense counsel objected to this testimony on the grounds that H.R.'s character or credibility had not been attacked and that any testimony regarding her character for truthfulness would be improper "bolstering." The trial court overruled the objection and allowed the testimony of H.R.'s second grade teacher.

### III. Evidence of Truthful Character

In his sole point on appeal, Michael argues that the trial court abused its discretion by allowing the State to bolster H.R.'s credibility through opinion testimony that H.R. had good character for truth when H.R.'s credibility had not been attacked through opinion testimony or otherwise. The State responds that the testimony regarding H.R.'s good character for truthfulness was admissible because it was relevant and because Michael had attacked her character for truthfulness within the meaning of Texas Rule of Evidence 608(a)(2). See TEX.R. EVID. 608(a)(2).

### A. Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App. 2001); *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State*, 810 S.W.2d

---

1. See TEX.R.APP. P. 47.4.

372, 379–80 (Tex.Crim.App.1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery*, 810 S.W.2d at 391. We will not reverse a trial courts ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement. *Id.*

## B. Analysis

■ Rule 608(a) of the Texas Rules of Evidence provides for the impeachment and rehabilitation of a witness's credibility. Rule 608(a) provides that:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> > (1) the evidence may refer only to character for truthfulness or untruthfulness, and
> >
> > (2) evidence of truthful character is admissible only after the *character* of the witness for truthfulness has been attacked by opinion or reputation evidence *or otherwise.*

Tex.R. Evid. 608(a) (emphasis added).

During direct examination, H.R. testified that Michael had rolled her over onto her back and that she had been lying on her right side prior to the incident. During cross-examination of H.R., Michael's defense counsel brought out discrepancies between H.R.'s testimony at trial and her videotaped interview. In particular, it was brought out on cross-examination that contrary to her direct testimony, H.R. stated in her videotaped interview that she was lying on her left side during the entire ordeal and that she did not say anything in her videotaped interview about being rolled over.

The State points to the following part of H.R.'s cross-examination as supporting its position that H.R's character for truthfulness was attacked by Michael:

[Defense Counsel]: Okay. Do you remember after you told your mom that you went and spoke with a lady about what had happened to you?

[H.R.]: Yes, ma'am.

[Defense Counsel] Okay. And do you remember her telling you before you started talking about this that there was a camera in the room?

[H.R.] Yes, ma'am.

[Defense Counsel]: Okay. And she told you that she was taping—

[H.R.]: Yes.

[Defense Counsel]:—the interview, right?

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. And do you remember her talking about how important it was to tell the truth?

[H.R.]: Yes, ma'am.

[Defense Counsel]: And, in fact, she even asked you about—she even gave examples?

[H.R.]: Yes.

[Defense Counsel]: Okay. What—what would be a truth and what would be a lie?

[H.R.]: Yes.

\* \* \*

[Defense Counsel]: Do you remember what you told her?

[H.R.]: Yes ma'am.

[Defense Counsel]: Okay. When you were talking to her, did you tell her that

you were laying on your left side and that [A.M.] and [J.M.] were on either side of you? [2]

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. In fact, she had some little dolls,—

[H.R.]: Yes, ma'am.

[Defense Counsel]:—right? She had a female doll and a male doll?

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. And she gave you the female doll and asked you to show her how you were laying?

[H.R.]: Yes, ma'am.

[Defense Counsel]: And you laid the doll on your left—on its left side?

[H.R.]: Yes.

* * *

[Defense Counsel]: Okay. And you—you never said anything to her about being rolled over or anything else, did you? [3]

[H.R.]: I don't think so, no.

* * *

[Defense Counsel]: And y'all's feet were down toward the—

[H.R.]: T

[Defense Counsel]: TV hutch. Okay. And do you recall telling the—the—the lady that you spoke with that you—you had—you never moved off your left side?

[H.R.]: Yes, ma'am.

* * *

[Defense Counsel]: Okay. And now, were you—were you on your side when all this was going on?

[H.R.]: I think he had rolled me onto my back.

[Defense Counsel]: Okay. But you didn't say that when you were talking to the lady?

[H.R.]: Right.

[Defense Counsel]: Okay. In fact, the lady asked you that question a couple of times, right?

[H.R.]: I think so.

[Defense Counsel]: Okay. And all—and every time you told her that, you stayed on your left side?

[H.R.]: Okay. Yes, ma'am.

* * *

[Defense Counsel]: Okay. Now, when you're describing everything that has occurred to you, do you remember—when you talked to the—the investigator who did the tape—

[H.R.]: Yes.

[Defense Counsel]:—the lady there at CPS, okay, do you recall her asking you what Mr. Michael's penis looked like?

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. Do you re-member what you told her?

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. What was that?

[H.R.]: I just told her it was sticking out like-she asked me if it was sticking up or down or anything like that. I just told her it was sticking out.

[Defense Counsel]: Okay. She asked you two questions. The first question was what it looked like. Do you recall tell-ing her it looked normal?

[H.R.]: Yes.

[Defense Counsel]: Okay. Are you sure that you told her that it was sticking out?

---

2. H.R. testified during direct examination that she had been sleeping on her right side.

3. H.R. testified during direct examination that Michael had rolled her over.

[H.R.]: I think I told her it was sticking down.

[Defense Counsel]: That it was hanging down?

[H.R.]: Yes.

[Defense Counsel]: Okay. So your statement a minute ago that it was sticking out was incorrect?

[H.R.]: Yes, ma'am.

* * *

[Defense Counsel]: Okay. And she asked you—do you remember her asking you the question about, well, how did this happen if your legs were here or here? Do you recall that?

[H.R.]: Yes, ma'am.

[Defense Counsel]: Okay. And do you recall telling her that you—you weren't sure—

[H.R.]: Yes.

[Defense Counsel]:—how that happened?

[H.R.]: Yes.

[Defense Counsel]: Because of the position that you were in?

[H.R.]: Yes.

[Defense Counsel]: Okay. And you weren't sure?

[H.R.]: Yes.

[Defense Counsel]: Okay. And—and you again stated that you still didn't see how he could have done what he did because the room was so small?

[H.R.]: Yes.

[Defense Counsel]: And you were on your left side?

[H.R.]: Right.

The State argues the Michael's cross-examination of H.R. by use of prior inconsistent statements aimed at impeaching her testimony amounted to an attack on H.R.'s character for truthfulness under the "otherwise" provision of Rule 608(a)(2), opening the door for rebuttal evidence as to H.R.'s character for truthfulness. Michael, on the other hand, argues that his questioning of H.R. was nothing more than a thorough cross-examination, not an attack on H.R.'s *character* for truthfulness. We agree with the State.

Rule 608(a) conditions the admissibility of evidence of a witness's good character for truthfulness to situations where the *character* of the witness for truthfulness has been attacked. TEX.R. EVID. 608(a); *see Moore v. State,* 143 S.W.3d 305, 324–25 (Tex.App.-Waco 2004, pet. ref'd) (Gray, C.J., concurring and dissenting) (stating that to be "admissible to rehabilitate an impeached witness's credibility, the method of impeachment must have attacked the witness's *character* for truthfulness, not just the witness's testimony").

▮ Evidence of a witness's character for truthfulness is not admissible simply because evidence has been admitted conflicting with the witness's testimony. *See Wallace v. State,* 501 S.W.2d 883, 886 (Tex.Crim.App.1973). Nor is evidence of a witness's character for truthfulness admissible simply because the witness has been subjected to a vigorous cross-examination. *Moore,* 143 S.W.3d at 315. However, Texas courts have historically treated the impeachment of a witness by prior inconsistent statements as an attack on the witness's veracity character permitting evidence of good character for truth and veracity in rebuttal. *See O'Bryan v. State,* 591 S.W.2d 464, 476 (Tex.Crim.App. 1979) (quoting 1 MCCORMICK AND RAY, TEXAS LAW OF EVIDENCE § 772 (2d ed.1956)). Thus, where a witness is placed in the position of testifying differently from that which she previously testified, i.e., where the witness is impeached by prior inconsistent statements, evidence of a witness's veracity character is admissible in rebuttal. *See Duckett v. State,* 797 S.W.2d 906, 918 (Tex.Crim.App.1990), *overruled on other grounds, Cohn v. State,* 849 S.W.2d

817, 819 (Tex.Crim.App.1993); *O'Bryan*, 591 S.W.2d at 476; *Adams v. State*, 514 S.W.2d 262, 264 (Tex.Crim.App.1974) (citing *Acker v. State*, 421 S.W.2d 398, 401 (Tex.Crim.App.1967)); *see also Foggle v. State*, 632 S.W.2d 402, 405 (Tex.App.-Forth Worth, no pet.) (citing *Wallace v. State*, 501 S.W.2d 883, 886 (Tex.Crim.App. 1993) (indicating that unless the State attempts to prove a defendant's good or bad reputation for veracity, *or shows contradictory statements of the defendant,* defendant may not prove his reputation for truth or veracity)).

Here, H.R. was placed in a position of having testified differently than her previous statements in the videotaped interview. This discrepancy is material because in her videotaped interview H.R. admitted that she could not explain how the alleged incident could have happened while she was lying on her left side. Further, just prior to confronting H.R. with her prior inconsistent statements, Michael's defense counsel asked H.R. if she remembered the interviewer discussing with her the importance of telling the truth and providing examples of what would be the truth and what would be a lie. Thus, after reviewing the testimony, we cannot say that the trial court abused its discretion in allowing the objected-to testimony regarding H.R.'s character for truthfulness because the trial court could have reasonably determined that Michael's cross-examination of H.R. was an attack on her character for truthfulness, opening the door to rehabilitative character testimony pursuant to Rule 608(a). We overrule Michael's sole point.

## IV. Conclusion

Having overruled Michael's sole issue, we affirm the trial court's judgment.