Eric Paul MICHAEL, Appellant

v.

The STATE of Texas.

No. PD–1611–05.

Court of Criminal Appeals of Texas.

Oct. 3, 2007.

Adam L. Seidel, Dallas, for appellant.

James E. Cook, Asst. D.A., Fort Worth, Matthew Paul, State's Attorney, Austin, for state.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Appellant, convicted of aggravated sexual assault and indecency with a child,[1] claims that the trial court reversibly erred

---

by permitting the State to bolster the credibility of its essential witness although her character for truthfulness had not been attacked. The Court of Appeals affirmed the decision of the trial court and held that, historically, impeachment of a witness with prior inconsistent statements is always an attack on the character of the witness, thus allowing rehabilitative evidence of truthfulness under Texas Rules of Evidence 608(a).[2] We disagree with such an analysis and therefore vacate and remand.

### Facts

On June 12, 2002, H.F.,[3] a nine-year-old girl, attended a sleep-over at the appellant's house. She slept in a guest bedroom with the appellant's two daughters. That night, appellant entered the room at approximately 1:00 am. He knelt by H.F's sleeping bag, pulled down his shorts, and began to masturbate. Appellant tried to get H.F. to touch his penis and eventually started performing oral sex on her. H.F. did not report this to anyone. Several months later while watching an episode of "The Practice" about a girl who had been raped, H.F. told her mother that appellant had "licked" her vagina. H.F's mother reported the assault to the police who eventually referred her to the National Alliance for Children (NAC). At the NAC, H.F. was interviewed about the assault. This interview was recorded on a video tape.

During trial, H.F's direct testimony was impeached on cross-examination by several prior inconsistent statements from her recorded interview at the NAC. Specifically, H.F. admitted that she told the interview-

---

1. TEX. PENAL CODE §§ 22.021, 21.11.

2. *Michael v. State,* 173 S.W.3d 829 (Tex.App.-Fort Worth 2005).

3. We note that the Court of Appeals mistakenly referred to the victim as "H.R." in its opinion.

er that the room was extremely small and she did not see how the appellant "could have done anything." She admitted that she never told the interviewer that the appellant rolled her on her back, despite being asked specifically that question. She also admitted that she told the NAC interviewer that appellant's penis was "hanging down," while her direct testimony was that it was "sticking out." Finally, she admitted that, during the interview, she stated that the entire attack occurred while she was on her left side, which was inconsistent with her in-court direct testimony.

During rebuttal the State called Stacy Turner, H.F.'s former teacher and babysitter, to testify about her opinion as to H.F.'s character for truthfulness. The trial defense counsel objected stating that the character of H.F. had not been attacked:

I don't believe we have attacked the credibility of the child. It's a issue of dates. It's a fact. It's a fact issue for the jury. It's not a question of credibility. We haven't—we haven't brought the—the child's character in—into question at all. We—we merely state that it didn't happen, and that's—that's just—that's our defense.

In response, the State argued:

Oh, just for the record, Your Honor, for the appellate lawyers, defense counsel went at great length through the contents of the videotape with the victim indicating, well, you said this then and you're saying this now. That kind of testimony absolutely opens the door to rebuttal on grounds of truthfulness. If that is the fact, regardless of what is said, it's an attack on credibility.

The trial judge overruled the objection, and Ms. Turner was permitted to testify. She testified that she taught H.F. in the second grade and later baby-sat H.F. the following fall, and in her opinion H.F.'s character for truthfulness was good.

Appellant challenged his conviction on the grounds that the testimony of Ms. Turner improperly bolstered the testimony of H.F., the State's essential witness, resulting in his conviction. Appellant argues that impeaching H.F. with her prior statements to the NAC interviewer was not an attack on her character that would permit rebuttal evidence of character for truthfulness. The Court of Appeals disagreed and affirmed the conviction. We believe that the Court did not use the correct standard for evaluating rehabilitative evidence under Texas Rule of Evidence 608(a), and we vacate its judgment and remand.

### Self Contradiction and Impeachment

■ Impeaching a witness with a prior inconsistent statement is not necessarily an attack on credibility that would allow rehabilitative evidence of character for truthfulness under Rule of Evidence 608(a). Although rehabilitation may be permitted under 608(a), it is not automatic. In this opinion we will address why a cross-examination with prior inconsistent statements is not necessarily an attack on character, as well as what factors a trial judge should examine to determine whether an attack has occurred and if character evidence as to truthfulness should be permitted.

■ At the outset, every witness is assumed to have a truthful character. If that character is attacked, Rule 608(a) allows the presentation of evidence of that witness's good character. In order to determine when character evidence of truthfulness is permitted, we must first decide what constitutes an attack on a witness's character for truthfulness.

■ There are five major forms of impeachment: two are specific, and three

are nonspecific. The two specific forms of impeachment are impeachment by prior inconsistent statements (also known as self-contradiction) and impeachment by another witness. The three non-specific forms of impeachment are impeachment through bias or motive or interest, impeachment by highlighting testimonial defects, and impeachment by general credibility or lack of truthfulness. Specific impeachment is an attack on the accuracy of the specific testimony (*i.e.*, the witness may normally be a truthteller, but she is wrong about X), while non-specific impeachment is an attack on the witness generally (the witness is a liar, therefore she is wrong about X).

■■■ When a witness's credibility has been attacked by any one of the five forms of impeachment, the sponsoring party may rehabilitate the witness only in *direct* response to the attack. "The wall attacked at one point may not be fortified at another and distinct point."[4] Generally, a witness's character for truthfulness may be rehabilitated with "good character" witnesses only when the witness's general character for truthfulness has been attacked.

■■ Impeachment by a prior inconsistent statement (or "self-contradiction") is normally just an attack on the witness's accuracy, not his character for truthfulness. As Wigmore explained:

The exposure of an error of a witness on one material point by his own self-contradictory statements is a recognized mode of impeachment. It serves as a basis for further inference that he is capable of having made errors on other

points. This possibility of other errors, however, is not attributable to any specific defect; it may be supposed to arise from a defect of knowledge, of memory, of bias, or of interest, or, by possibility only, of moral character. *Thus, though the error may conceivably be due to dishonest character, it is not necessarily, and not even probably, due to that cause.*[5]

■■ There are circumstances, however, where the cross-examiner's intent and method clearly demonstrate that he is not merely attacking the conflict in the witness's testimony between one or more specific facts, but mounting a wholesale attack on the general credibility of the witness. If the inconsistent statement is used to show that the witness is of "dishonest character," then it follows that the opposing party should be allowed to rehabilitate this witness through testimony explaining that witness's character for truthfulness. Alternatively, if this testimony is used to show some other defect, then such evidence should not be allowed. How is one to know for which purpose the proponent is eliciting the inconsistent information?

Prior to the adoption of the Texas Rules of Evidence, our case law held that impeachment with prior inconsistent statements was an attack on credibility, allowing character evidence to rehabilitate a witness. In *O'Bryan v. State*, the defendant impeached a State's witness's testimony with his prior sworn testimony concerning dates, times, and descriptions of the defendant's clothing.[6] In rebuttal the State presented evidence of the witness's reputation for truth and veracity. The

---

4. CHARLES T. MCCORMICK, MCCORMICK ON EVIDENCE, § 49 at 116 (2d ed.1984).

5. JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE, § 1108(A) (James H. Chabourn rev.1972) (emphasis added) (internal citations omitted).

6. 591 S.W.2d 464, 476 (Tex.Crim.App.1979).

Court likened impeachment by self-contradiction to an attack on a witness's "veracity character," and held that the testimony was permissible.[7] The Court did not explain, however, why this form of impeachment necessarily impugned a witness's character for truthfulness.

The Federal Rules of Evidence modified the common-law position held by some states, including Texas, that allowed rehabilitation evidence of truthful character when the witness was impeached by self-contradiction. Although the text of Federal Rule 608(a) does not make an explicit delineation between impeachment by self-contradiction and other forms of impeachment, the advisory committee notes state: "Whether evidence in the form of contradiction is an attack upon the character of a witness *must depend in part upon the circumstances*."[8] Texas Rule 608(a) is identical to Federal Rule 608(a). We find no reason for the Texas rule to be interpreted differently than the identical federal rule.

Since the Texas Rules of Evidence were adopted in 1986, this Court has not written an opinion directly addressing the issue of determining when a cross-examination by prior inconsistent statement is an attack against someone's character for truthfulness, thus permitting rehabilitation by character evidence of truthfulness. Some courts have held that rehabilitation should be permitted when the witness is subject to a "slashing cross-examination."[9] We, however, believe that the question should not be whether the cross-examination is "slashing" but whether the overall tone and tenor of the cross-examination implied that the witness is a liar.

It may be quite obvious that a witness's character for truthfulness has been attacked directly, as by a question such as, "Were you lying then or are you lying now?" or another witness's testimony that the witness is a liar or is untruthful. When a party uses prior inconsistent statements to impeach someone, the cross-examiner's intent may not be as clear. As we have said above, there are several reasons why one's statements may be inconsistent, and most of them do not imply dishonest character.

## Federal Cases

Since there are several federal cases on point, we look to them for guidance in determining a workable standard. In *United States v. Dring*, the Ninth Circuit held that specific attacks on the defendant's testimony during cross-examination did not open the door to opinion or reputation evidence in rehabilitation.[10] Dring was impeached by inconsistencies between his testimony and that of other witnesses. The Ninth Circuit reasoned that since these were direct attacks on specific testimony and not attacks on the witness's general character, rehabilitation evidence of truthful character was not relevant.

The purpose of Rule 608(a)(2) is to encourage direct attacks on a witness's veracity in the instant case and to discourage peripheral attacks on a witness's general character for truthfulness. To this end, the Rule prohibits rehabilitation by character evidence of truthfulness after direct attacks on a witness's veracity in the instant case. However the Rule permits rehabilitation

---

7. *Id.* at 476.

8. FED. R. EVID 608 advisory committee's note, subdiv. (a) (emphasis added).

9. *See, e.g., United States v. Scholle*, 553 F.2d 1109, 1123 (8th Cir.1977); *United States v. Angelini*, 678 F.2d 380, 382 (1st Cir.1982)

10. 930 F.2d 687, 692 (9th Cir.1991).

after indirect attacks on a witness's general character for truthfulness.[11]

The Court further discussed what indicators may help a trial judge to determine whether a witness's character for veracity was sufficiently attacked to warrant rehabilitation under Rule 608(a)(2). It stated that vigorous cross-examination alone, even though it pointed out inconsistencies between prior statements or statements of other witnesses, may not be enough.[12] Alternatively, it held that vigorous cross-examination that amounts to an indirect attack by eliciting information as to bad reputation, bad opinion of character for truthfulness, conviction of a crime, or eliciting information from the witness about misconduct that did not result in conviction would justify rehabilitation under Rule 608(a)(2).[13]

The Ninth Circuit has also held that an opening statement that a particular witness is a liar or not to be trusted is close enough to credibility impeachment to allow a party to offer rehabilitative evidence.[14]

The Seventh Circuit has held that impeachment by self-contradiction may be an attack triggering Federal Rule 608(a) when used to suggest a deliberate falsehood by the witness.[15]

The facts of an unpublished Fourth Circuit case, *United States v. Cruz*, are also illustrative.[16] In that case, a co-defendant, Nelson, was convicted of conspiracy to transport drugs aboard a sailboat.[17] Her only defense at trial was her testimony that she could not have participated in the conspiracy since she had no knowledge that drugs were on board.[18] During her cross-examination the government questioned her about several self-contradicting statements, including inconsistent statements to her friends, law-enforcement officers, and the magistrate judge concerning her involvement with a co-defendant. The government "painted a picture of Nelson as a calculating deceitful person."[19] In a case like that it is error not to allow a defendant the ability to call witnesses to defend her character since such an attack discredited her presumed honest character.[20]

## Standard

■ Based on the reasoning in these decisions, we hold that the question for the trial judge is whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel (*e.g.,* during voir dire or opening statements).

11. *Id.* at 690–91.

12. *Id.* at 691.

13. *Id.* at 692.

14. *United States v. Santiago*, 46 F.3d 885, 891–92 (9th Cir.1995), *United States v. Necoechea*, 986 F.2d 1273, 1278–279 (9th Cir.1993), Fred Warren Bennett, *Criminal Law Symposium: Is the Witness Believable? A New Look at Truth and Veracity Character Evidence and Bad Acts Relevant to Truthfulness in a Criminal Case,* 9 St. Thomas Law Rev. 569, 589 (1997) ("[W]here a party indicates in opening statement that particular witnesses are liars or are not to be trusted, this tactic comes close enough to impeachment to allow the calling party to support veracity.").

15. *Beard v. Mitchell*, 604 F.2d 485, 503 (7th Cir.1979). *Accord, Byrd v. State*, 593 N.E.2d 1183, 1185 (Ind.1992).

16. 1992 U.S. App LEXIS 4442, *16 (4th Cir. March 12, 1992).

17. *Id.* at *16–17.

18. *Id.* at *21.

19. *Id.*

20. *Id.*

## Conclusion

We vacate the judgment of the Court of Appeals and remand the case to that Court for further proceedings consistent with this opinion.

KELLER, P.J., and KEASLER, J., concurred in the judgment.