ACCEPTED
03-15-00083-CV
7916404
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/19/2015 7:05:28 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00083-CV

_____

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/19/2015 7:05:28 PM
JEFFREY D. KYLE
Clerk

_____

CRAIG A. WASHINGTON

Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE

Appellees.

_____

Appeal from the District Court of Bastrop County 335th Judicial District,
Cause No. 29,123

_____

# Reply Brief

_____

Michael A. Stafford
   Texas Bar No. 18996970
   mstafford@gardere.com
Katharine D. David
   Texas Bar No. 24045749
   kdavid@gardere.com
Stacy R. Obenhaus
   Texas Bar No. 15161570
   sobenhaus@gardere.com
John MacVane
   Texas Bar No. 24085444
   jmacvane@gardere.com

Gardere Wynne Sewell LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Tel: 713.276.5500
Fax: 713.276.5555

COUNSEL FOR APPELLANT
CRAIG A. WASHINGTON

# Table of Contents

**Page(s)**

Index of Authorities................................................................4

Summary of Reply ................................................................5

Reply ................................................................7

I.    <u>A clarification of the issues</u>: The Commission does not dispute that the trial court erroneously excluded evidence of Mr. Washington's good character................................................................7

II.    Mr. Washington directly refuted Mr. Gobert and Ms. Randle's version of events—to the extent the trial court's limits on his testimony permitted. ................................................................15

III.    There was nothing particularly "compelling" about Mr. Gobert and Ms. Randle's testimony that would have rendered evidence of Mr. Washington's character inconsequential................................20

IV.    The record, viewed as a whole, establishes that Mr. Washington would have introduced compelling and overwhelming character evidence if permitted to do so. ................................22

V.    Evidence of Mr. Washington's excellent reputation was also admissible to support his credibility as a witness. ................24

    A.    It would be inapropriate to assume that evidence of Mr. Washington's truthful character would not have altered the verdict as to the other charges against Mr. Washington. ................................25

    B.    The Commission directly attacked Mr. Washington's credibility, which permitted him to introduce evidence of his good character under Rule 608(a)................................27

    C.    Mr. Washington's counsel preserved rehabilitation of Mr. Washington as a witness as a basis for admitting character evidence. ................................29

VI.   Mr. Washington stands on his prior briefing with regard to his remaining arguments. .............................................................................35

Prayer ...............................................................................................................35

Certificate of Service ....................................................................................37

Certificate of Compliance ...........................................................................37

# Index of Authorities

**Page(s)**

**CASES**

*Arkoma Basin Exploration Co., Inc. v. FMF Associates 1990-A, Ltd.,*
    249 S.W.3d 380 (Tex. 2008) ...............................................................34

*Barina v. Barina,*
    No. 03-08-00341-CV, 2008 WL 4951224 (Tex. App.—Austin Nov.
    21, 2008, no pet.) ...............................................................................30

*Michael v. State,*
    235 S.W.3d 723 (Tex. Crim. App. 2007)......................................14, 27

*Reliance Steel & Aluminum Co. v. Sevcik,*
    267 S.W.3d 867, 871 (Tex. 2008)........................................................23

*Thota v. Young,*
    366 S.W.3d 678 (Tex. 2012)..................................................................2

*Wooten v. State,*
    No. 03-11-00667-CR, 2013 WL 1831571 (Tex. App.—Austin Apr. 24,
    2013, pet. ref'd) .................................................................................29

**OTHER AUTHORITIES**

Tex. R. App. P. 9.4 ......................................................................................37

Tex. R. App. P. 33.1 ..............................................................................30, 5

Tex. R. App. P. 44.1 ..............................................................................15, 26

Tex. R. Evid. 404 ................................................................................*passim*

Tex. R. Evid. 608(a)............................................................................*passim*

## Summary of Reply

Reputation is a lawyer's stock-in-trade. As members of the bar, we devote our lives to establishing, maintaining, and preserving our reputations. Whether before a court, a client, or a colleague, our reputation is often our most valuable bargaining chip; it is always our most prized.

Craig Washington knew this. He spent forty-five years fighting for those who most needed an advocate and exemplifying the best of our profession. Over the course of his career, he represented those most in need for free. In exchange for this sacrifice, Mr. Washington received something more valuable to a lawyer than any fee. At every turn and every day, Mr. Washington invested in his reputation: a reputation characterized by honesty, integrity, and excellence as an advocate.

In this case, Mr. Washington's clients called him a liar. The Commission for Lawyer Discipline charged him with deceit, dishonesty, and misrepresentation, and attacked his credibility at every opportunity.

When Mr. Washington took the stand in his own defense, he did so stripped of the reputation that he'd spent a lifetime earning. This man, who'd sacrificed so much to engender respect and friendship from all corners of the Texas bar, faced his two accusers alone. He sought to

5

introduce character evidence, and his lawyer clearly articulated multiple bases for doing so, but his request was denied.

On appeal, the Commission *does not dispute* that keeping Mr. Washington's reputation from the jury was error, but the Commission contends any error was harmless. Mr. Washington respectfully submits that few lawyers compelled to stand alone against a former client without the comfort and support of allegiances earned over a lifetime would agree with the Commission's harm analysis. Mr. Washington respectfully submits that stripping a forty-year lawyer of the stellar reputation that he spent a lifetime earning cannot be characterized as "harmless." Nor can pitting this lawyer alone in a two-on-one swearing contest against disgruntled clients.

The Rules allowing admission of character evidence exist because the marks of honesty on which jurors rely everyday are often absent in the courtroom. All witnesses—whatever their history—guaranty their honesty by oath alone. To the jury, all oaths appear equal—even though everyone knows that they are not, and often cannot be.

Excluding character evidence in this case was patently harmful and that error requires reversal of the trial court's judgment.

# Reply

**I.  A CLARIFICATION OF THE ISSUES: THE COMMISSION DOES NOT DISPUTE THAT THE TRIAL COURT ERRONEOUSLY EXCLUDED EVIDENCE OF MR. WASHINGTON'S GOOD CHARACTER.**

The Commission does not argue that the trial court properly exercised its discretion in excluding evidence of Mr. Washington's good character. The parties are in agreement that the Commission accused Mr. Washington of conduct involving moral turpitude, so Rule 404(a)(1)(B) entitled him to introduce evidence of his exemplary character. Excluding this evidence was error.

Ignoring the trial court's violation Rule 404(a)(1)(B), the commission instead argues that evidence of Mr. Washington's good character would have had no effect on the outcome of this case—a case about whether Mr. Washington deceived his client (Comm'n Br. at 16-23).

The Commission's focus on this single charge exposes an important point about the harm analysis. Mr. Washington devoted significant briefing to the harmfulness of excluding evidence of his good character across *all* of

7

the allegations against him, but the Commission largely ignores this directly conflicting evidence on most of the charges.[1]

The conflicting evidence on the charges other than deception is summarized as follows:[2]

| Allegation | Mr. Washington's Evidence | Commission's Evidence |
|---|---|---|
| Mr. Washington neglected a matter entrusted to him. | Mr. Washington testified that he properly attended to Mr. Gobert's case by:[3]<br><br>➢ conducting discovery and preparing for trial;[4] | The Commission offered no testimony contradicting Mr. Washington's explanation, but attempted to impeach and contradict him with various documents.[5] |

[*continued on following page*]

---

[1] The allegations against Mr. Washington were (1) neglecting his clients' case, (2) failing to keep his clients reasonably informed, (3) failing to promptly comply with requests for information, (4) failing to surrender papers, and (5) conduct involving deceit, dishonesty, and misrepresentation (1 CR 140-44).

[2] This summary—in varying levels of detail was also laid out in Mr. Washington's principal brief at pages 3–11 and 28–30. Mr. Washington incorporates these discussions of the conflicting evidence herein for all purposes.

[3] (*See, generally*, 4 RR 81:14-114:2).

[4] (*See* 4 RR 94:15-:17).

[5] (4 RR 36:15-37:4); (4 RR 45:7-49:18).

8

| Allegation | Mr. Washington's Evidence | Commission's Evidence |
|---|---|---|
| Mr. Washington neglected a matter entrusted to him. [*continued*] | ➢ attending the conflicting murder setting instead of Mr. Gobert's setting in accordance with the local rules;[6]<br><br>➢ informing the Gobert court of the conflict by phone on two occasions;[7]<br><br>➢ informing opposing counsel of the conflict;[8]<br><br>➢ sending a substitute attorney to the Gobert pretrial;[9] | |

[*continued on following page*]

---

[6] (4 RR 46:7-48:1).

[7] (4 RR 35:18-36:3); (8 RR P's Exh 18, .pdf 83).

[8] (4 RR 54:5-:9).

[9] (4 RR 35:23-36:3).

| Allegation | Mr. Washington's Evidence | Commission's Evidence |
|---|---|---|
| Mr. Washington neglected a matter entrusted to him. [*continued*] | ➢ moving to reinstate after the court improperly dismissed the case for want of prosecution without notice or a hearing;[10] and<br><br>➢ appealing the court's ruling after it denied the motion to reinstate (again while improperly denying Mr. Gobert his right to a hearing)[11] | |

---

[10] (8 RR P's Exh 18, .pdf 85-89).

[11] (8 RR P's Exh 17, .pdf 60-64).

| Allegation | Mr. Washington's Evidence | Commission's Evidence |
|---|---|---|
| Mr. Washington failed to keep his clients reasonably informed.[12] | Mr. Washington testified that:<br><br>➢ he notified Ms. Randle of the case's dismissal after it occurred and before filing his motion to reinstate;[13]<br>➢ he never failed to return Ms. Randle's calls, allow her an appointment, or provide her copies of case materials;[14] and<br><br>➢ he informed both Mr. Gobert and Ms. Randle about the case's trial setting in person.[15] | Ms. Randle testified that Mr. Washington never informed her that the district court had dismissed Mr. Gobert's case or that he had moved to reinstate the case.[16]<br><br>Mr. Gobert similarly testified that Mr. Washington was often unreachable,[17] that Mr. Washington failed to inform him of the case's dismissal,[18] and that Mr. Washington failed to inform him of the case's trial setting.[19] |

---

[12] (1 CR 141).

[13] (4 RR 106:10-:13).

[14] (4 RR 132:10-:23).

[15] (4 RR 50:7-:14).

[16] (3 RR 44:11-:21).

[17] 3 RR 144:24-145:14; 156:11-157:10).

[18] (147:7-:13, 150:8-:12).

[19] (4 RR 147:14-:16).

| Allegation | Mr. Washington's Evidence | Commission's Evidence |
|---|---|---|
| Mr. Washington failed to promptly comply with reasonable requests for information[20] and to surrender documents[21] | Mr. Washington testified that he provided Ms. Randle with a copy of the file whether she asked for it or not.[22] | Ms. Randle said that Mr. Washington gave her a copy of the file at one time, but that she did not receive any documents after 2008.[23]<br><br>Mr. Gobert said that he requested a copy of the file from Mr. Washington, but did not receive one.[24] |

As this chart and Mr. Washington's principal brief demonstrate, Mr. Washington's testimony and evidence on each of the above issues directly and sharply conflicted with the Commission's. Nonetheless, in its Appellee's brief, the Commission hardly addresses the contested evidence on the majority of the allegations against Mr. Washington.

Instead, the Commission argues that the character evidence which Mr. Washington concededly could have admitted under Rule 404(a)(1)(B)

---

[20] (1 CR 142).

[21] (1 CR 143).

[22] (4 RR 131:16–134:11).

[23] (3 RR 30:9-:25).

[24] (4 RR 162:7:-:24).

was inadmissible under Rule 608(a).[25] According to the Commission, even though it expressly accused Mr. Washington of "dishonesty, deceit, [and] misrepresentation,"[26] and even though Mr. Washington's credibility was the central focus of the case, Mr. Washington could not introduce character evidence to rebut the Commission's attack.

As discussed below, this argument is wrong as a matter of law. But more to the point, the Commission's attempt to cabin the admissibility of Mr. Washington's character evidence to a single charge relies upon a razor-thin distinction between an "attack" on credibility under Rule 608(a) and an "accus[ation] involving moral turpitude" under Rule 408(a)(1)(A).

No such distinction can colorably be said to exist in this case. The Commission accused Mr. Washington of "conduct involving dishonesty, deceit, [and] misrepresentation" (1 CR 144). Mr. Washington's initial brief pointed out the myriad ways in which the Commission pressed this accusation through its argument, evidence, and examination of Mr. Washington (Washington Br. at 22–23; 25–26). Indeed, the Commission *had*

---

[25] The Commission also argues that Mr. Washington failed to preserve the admissibility of the evidence under Rule 608(a) for this Court's review. As discussed below, this is not the case.

[26] (1 CR 144).

to attack Mr. Washington's credibility *to prove its case*. Question Number 4 to the jury asked whether Mr. Washington "engage[d] in conduct involving dishonesty, deceit, or misrepresentation" (1 CR 144).

Expecting a juror to so compartmentalize the evidence that the Commission all but concedes was admissible asks too much. No juror could possibly be expected to consider evidence of Mr. Washington's honesty *only* when determining whether he lied to his clients while simultaneously ignoring this evidence when determining whether Mr. Washington was telling the truth on the stand. And more to the point, no juror would understand the substantive accusations that Mr. Washington lied to his client to be anything other than an attack on Mr. Washington's credibility. *See Michael v. State*, 235 S.W.3d 723, 728 (Tex. Crim. App. 2007) (stating that test to determine "attack" under Rule 608(a) is "whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel").

\* \* \* \*

In short, the erroneous exclusion of Mr. Washington's character evidence infected the entire trial. Parsing the evidence as the Commission

14

requests disregards both the Rule 608(a) "attack-on-credibility" test and any common sense understanding of how the jury would have interpreted the evidence.

Under Texas Rule of Appellate Procedure 44.1(b), this Court can only reverse in part when it can do so "without unfairness to the parties." Given the practical impossibility of separating Mr. Washington's character for truthfulness with respect to the substantive charges from his character for truthfulness as a witness, compartmentalizing the issues as the Commission urges would be unworkable in practice.

The Commission's specific arguments regarding exclusion of the character evidence are addressed below.

## II. MR. WASHINGTON DIRECTLY REFUTED MR. GOBERT AND MS. RANDLE'S VERSION OF EVENTS — TO THE EXTENT THE TRIAL COURT'S LIMITS ON HIS TESTIMONY PERMITTED.

The Commission first argues that the exclusion of Mr. Washington's character evidence was harmless because Mr. Washington offered the equivalent of "no evidence" that he did not explicitly lie to his clients regarding the status of the case (Comm'n Br. at 24).

But Mr. Washington *did* dispute Mr. Gobert and Ms. Randle's version of events. In fact, Mr. Washington directly testified that he informed Ms. Randle of the case's dismissal shortly after it occurred:

> Q. Your office learned that the case had been dismissed on October 14th?
>
> A. That's correct.
>
> Q. And what was your response?
>
> A. My legal response?
>
> Q. Yes, sir. What was your—as an attorney, what did you do next?
>
> A. **I notified Ms. Randle**, I think was her name still at the time. And I took what action I thought I could to rectify the situation. I filed a motion to reinstate the case on the docket.

(3 RR 106:5-:15) (emphasis added).

It's unclear how much more direct the Commission believes Mr. Washington needed to be in order to rebut Mr. Gobert's and Ms. Randle's allegations. Gobert and Randle said that Mr. Washington *never* informed them of the dismissal until they discovered it independently years later. Mr. Washington said that the first thing he did after the dismissal was inform Ms. Randle.

16

The Commission never asked Mr. Washington whether he lied to his clients about the case. Nonetheless, the Commission makes much of Mr. Washington's "evasive" answer to his own counsel's question regarding whether Mr. Washington told Ms. Randle that there "were no problems with the case, everything was going smoothly, even though the case had been dismissed and [Mr. Washington had] appealed it" (*see* Comm'n Br. at 22).

Contrary to the Commission's argument, in the context of the examination, Mr. Washington's answer— that "[f]rom day one," he "told [Ms. Randle] what the problems were" (4 RR 133:6-:12)—could not have been more direct. Mr. Washington's trial counsel spent much of the examination addressing the folly—both legal and factual—of the Commission's argument that Mr. Washington's handling of conflicting trial settings violated ethical rules. Though the Commission scarcely addresses these issues in its appellate brief, they were hotly contested in the trial court (*see* Washington Br. at 7-11; 28-30).

By the time Mr. Washington reached the deception allegation—an accusation that, as discussed above, he'd already expressly denied—the Court informed Mr. Washington's counsel that he had only two minutes

remaining (4 RR 131:17). As a result of this limited time, counsel and Mr. Washington addressed the allegations of failure to inform and deception in a summary fashion:

> Q. Did you ever not return phone calls of [Ms. Randle's]?
>
> A. No.
>
> Q. Ever ignore her or refuse to make an appointment?
>
> A. No, never refused to see her when she came by without an appointment.
>
> Q. Did you ever not provide her with a copy of the file if she asked for one?
>
> A. No. Whether she asked for it or not, I kept her informed—I kept her informed of what was going on because the case was important to me because I can imagine what it's like to lose a child. . . .
>
> Q. Did you ever tell her that the—there were no problems with the case, everything was going smoothly, even though the case had been dismissed and you appealed it?
>
> A. There were problems with this case from the beginning. From day one there were—and I told her what the problems were.
>
> Q. In fact, you would receive calls from not just Ms. Carter and Mr. Gobert and Mr. Black and the attorneys but from the entire greater family would call regularly to find out, when are we going to get our money?

A. Everybody was looking for money. And some of them didn't have an interest, wasn't going to get a dime anyway, but they would still call. And I would talk to them because I'm trying to keep the peace.

. . . .

THE COURT: Your time is up.

(4 RR 132:10-134:12).

While covering significant ground quickly, this testimony nonetheless made clear that Mr. Washington informed his clients of the case's dismissal, along with the other issues in the case. This testimony was not "evasive." It was summary—a necessary tactic given the court-imposed time constraints, and a reasonable one, given that Mr. Washington had already expressly refuted the allegations of deceit and failure to inform.

The plain meaning and purpose of this testimony was to expressly deny the Commission's allegations of deceit. The jury certainly would have understood the "problems" to which Mr. Washington referred in his answer to be those expressly referenced by counsel in the question, *i.e.*, that "the case had been dismissed and [Mr. Washington] appealed it" (4 RR 133:6-:9). Indeed the question expressly referenced the very allegation of deceit on which the Commission relies on appeal, *i.e.*, that Mr. Washington

told Mr. Gobert and Ms. Randle that "there were no problems with the case [and] everything was going smoothly [following the dismissal]" (4 RR 133:6-:9).

To lift this quote from the context of the entire trial and say that it does not amount to a denial of the Commission's allegations of deceit blinks at reality. The entire purpose of the question and answer was to comprehensively and forcefully deny these very allegations. Mr. Washington's statement amounts to such a denial on its face and no juror could have construed the statement as anything other than a denial of the allegations referenced in the question.

In this way, far from offering "no evidence," Mr. Washington directly refuted the Commission's allegations of deceit. Thus, as Mr. Washington has repeatedly argued, the case was a credibility contest, and Mr. Washington's inability to introduce evidence of his truthful character was profoundly harmful.

III. **THERE WAS NOTHING PARTICULARLY "COMPELLING" ABOUT MR. GOBERT AND MS. RANDLE'S TESTIMONY THAT WOULD HAVE RENDERED EVIDENCE OF MR. WASHINGTON'S CHARACTER INCONSEQUENTIAL.**

The Commission also suggests that any character evidence could not have swayed the jury's vote because Mr. Gobert and Ms. Randle's

testimony was somehow particularly compelling (Comm's Br. at 17-23). This argument ignores the presiding juror's testimony that she and other jurors questioned whether Mr. Gobert had perjured himself (7 RR 146:8-:25).

That the jury split on whom to believe *without* Mr. Washington introducing any character evidence demonstrates that the introduction of such evidence would have shifted the jury's verdict. Indeed, had Mr. Washington been able to present himself as the legal luminary that he is instead of the "old and cocky or arrogant" practitioner as misportrayed by erroneously admitted suspension evidence and Gobert and Randle's testimony, the jury likely would have changed its verdict (7 RR 139:8-:14).

In any event, given juror testimony that Mr. Gobert was barely believed, the Commission's argument that his testimony and that of Ms. Randle could not have been overcome with support from character witness should be rejected.

**IV.** **THE RECORD, VIEWED AS A WHOLE, ESTABLISHES THAT MR. WASHINGTON WOULD HAVE INTRODUCED COMPELLING AND OVERWHELMING CHARACTER EVIDENCE IF PERMITTED TO DO SO.**

The Commission also attempts to diminish the magnitude of Mr. Washington's character evidence by focusing upon the one witness that Mr. Washington presented to make his bill of exception in the trial court.

In doing so, the Commission largely ignores its stipulation that, if permitted, Mr. Washington "[would have] call[ed] a series of . . . individuals [who] would [have] provide[d] substantially similar testimony about Mr. Washington's character and reputation for truth and his veracity, honesty and plain dealing" (*see* 4 RR 228:14-:24). This Court must—at the least—take this stipulation at face value and conclude that Mr. Washington would have called a number of other individuals who would have similarly bolstered his credibility.

In considering who these individuals might have been, what they might have said, and whether their exclusion was harmless error, this Court must review "the entire record to determine whether the [erroneous exclusion of character evidence] probably caused the rendition of an improper judgment." *Thota v. Young*, 366 S.W.3d 678, 693 (Tex. 2012);

22

This record includes a voluminous amount of good character evidence that Mr. Washington introduced in the sentencing phase. Mr. Washington's principal brief cited and discussed that evidence at length.

The Commission's contention that this evidence is irrelevant to the harmless error analysis requires that this Court turn a blind eye to the record evidence and ignores both the parties' stipulation and the broad scope of harmless error review that the Texas Supreme Court proscribes. As a practical matter, requiring Mr. Washington to call every individual character witness in support of his bill of exception would have defeated the purpose of the summary stipulation to which the parties agreed. The record contains evidence of precisely the nature and scope of the good character testimony that Mr. Washington would have presented. Consistent with this Court's obligation to review the entire record when assessing harm, the Court should not disregard this compelling evidence. *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (when analyzing harmless error, "[a] reviewing court must evaluate the whole case from voir dire to closing argument, considering the state of the evidence, the strength and weakness of the case, and the verdict.").

**V.** **EVIDENCE OF MR. WASHINGTON'S EXCELLENT REPUTATION WAS ALSO ADMISSIBLE TO SUPPORT HIS CREDIBILITY AS A WITNESS.**

While essentially conceding that the trial court erroneously excluded Mr. Washington's character evidence under Rule 404(a)(1)(B), the Commission devotes significant briefing to arguments that either (1) the trial court properly excluded the evidence under Rule 608(a) or (2) Mr. Washington failed to preserve error regarding this basis for admission of the evidence.

In focusing on the admissibility of the evidence under Rule 608(a), the Commission attempts to cabin the trial court's error by arguing that any good character evidence was admissible solely to determine Mr. Washington's substantive liability for deceit (Rule 404(a)(1)(B)), rather that his credibility generally (Rule 608(a)).

This Court should reject the Commission's invitation to so confine its harm analysis. The evidence that Mr. Washington sought to introduce was relevant and admissible as to his character for truthfulness generally. There is no indication that, had the trial court admitted the evidence, the Commission would have sought to limit its use. In addition, the evidence is

24

plainly admissible to determine Mr. Washington's credibility as a witness under Rule 608(a) and Mr. Washington preserved its admission on this basis.

**A. It would be inappropriate to assume that evidence of Mr. Washington's truthful character would not have altered the verdict as to the other charges against Mr. Washington.**

The Commission appears to argue that, even if character evidence was admissible on the charge of deceit, it was not admissible—and therefore could not provide a basis for reversal—with regard to the other charges against Mr. Washington.

This attempt to limit an error that broadly undermined Mr. Washington's credibility to a single charge relies upon several implausible assumptions, none of which the record the record supports:

1. It assumes that if the trial court had admitted the evidence under Rule 404(a)(1)(B), the Commission would have requested a limiting instruction that the evidence not be considered for evaluating Mr. Washington's honesty generally.

2. It assumes that, in response to this request, Mr. Washington would not have clarified his statement that evidence of truthful character was admissible across all allegations to rehabilitate Mr. Washington as a witness.

3. It assumes that the trial court would have concluded (incorrectly) that the evidence was admissible under Rule 404(a)(1)(B), but was not admissible under Rule 608(a).

25

4. It assumes that the trial court would have issued an instruction that the jury was to consider Mr. Washington's character only for the purpose of determining whether Mr. Washington lied to his clients, not for the purpose of determining whether Mr. Washington's was lying during testimony to the jury.

5. Finally, and perhaps most implausible of all, it assumes that the jurors could engage in the mental gymnastics necessary to compartmentalize this information in compliance with such an instruction.

Rule of Appellate Procedure 44.1(b), allows this Court to isolate harm, but only when it can do so "without unfairness to the parties." Cabining the erroneous exclusion of character evidence only to the charge of deceit requires profoundly unfair speculation about how the parties would have responded had the trial court admitted the character evidence that the Commission now concedes was admissible.

The erroneous exclusion of Mr. Washington's character evidence is "baked in the cake." The evidence was directly relevant to Mr. Washington's credibility, Mr. Washington sought to admit it for all purposes, and the only reasonable conclusion is that the jury would have considered it for all purposes.

As a result, in analyzing whether introduction of Mr. Washington's character evidence would have changed the jury's verdict, this Court

26

should examine the conflicting evidence as to all of the charges against Mr. Washington and reject the Commission's speculative attempt to narrowly limit the error's consequences.

**B.      The Commission directly attacked Mr. Washington's credibility, which permitted him to introduce evidence of his good character under Rule 608(a).**

In addition, Mr. Washington expressly sought to introduce the character evidence to rehabilitate the Commission's attacks on his character, and the trial court erred in refusing this request. The test for admission of character evidence under Rule 608(a) "is whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel (*e.g.,* during voir dire or opening statements)." *Michael v. State*, 235 S.W.3d 723, 728 (Tex. Crim. App. 2007).

A reasonable juror could not construe the following statements (all of which come from the Commission's jury arguments) to be anything other than what they were—direct attacks on Mr. Washington's credibility:

> ➢ "[O]ur allegation is that Mr. Washington . . . was dishonest with [his] clients" (3 RR 7:20-:23);

➢ "[Mr. Washington] misrepresented facts to [his clients], and he deceived them into believing something that wasn't--that wasn't what it was" (3 RR 7:20-8:1);

➢ "[T]hroughout all of it, [Mr. Washington] was dishonest, deceitful, and misrepresented everything about the status of this case" (3 RR 13:1-:5);

➢ "[Mr. Gobert and Ms. Randle] were especially hurt by Mr. Washington's dishonesty and deceit, and the fact that he had misrepresented the status of the case to them . . ." (3 RR 12:9-:14);

➢ "He lied to you [(in a hypothetical scenario that called upon jurors to place themselves in the shoes of Gobert and Randle)]" (5 RR 10:25).

In particular, the statement that "[Mr. Gobert and Ms. Randle] were especially hurt by Mr. Washington's dishonesty and deceit" goes beyond merely pointing to an isolated incident. The implication of the Commission's use of the possessive "Mr. Washington's" is that dishonesty and deceit are qualities belonging to or characterizing Mr. Washington.

In other words, the Commission did not refer simply to a single statement that Mr. Washington made, but to traits, *i.e.*, dishonesty and deceit, that it contended he possessed. This is exactly the type of "attack" on Mr. Washington's character for truthfulness that permitted him to introduce character evidence under Rule 608(a).

28

Indeed, if an *entire trial* accusing a testifying witness of "conduct involving dishonesty, deceit, [and] misrepresentation" cannot be characterized as an "attack" on the witness's truthfulness, one struggles to imagine what could be. And in addition to this substantive charge, the Commission's trial tactics certainly placed Mr. Washington's character at issue. Mr. Washington thoroughly discussed these attacks in his principal brief at pages 22-26.

Mr. Washington's counsel requested to introduce evidence of Mr. Washington's character to rehabilitate Mr. Washington's credibility as a witness. Rule 608(a) permitted Mr. Washington to introduce character evidence for this purpose. As a result, this Court should not limit its harm analysis of the exclusion of character evidence solely to the charge of deceit, but should consider the broader impact of the exclusion on the jury's assessment of Mr. Washington's credibility.

### C. Mr. Washington's counsel preserved rehabilitation of Mr. Washington as a witness as a basis for admitting character evidence.

As this Court has observed in other contexts, "a party need not recite 'magic words' or cite specific statutes to preserve a complaint for appeal." *Wooten v. State*, No. 03-11-00667-CR, 2013 WL 1831571, at *4 (Tex. App.—

Austin Apr. 24, 2013, pet. ref'd)); *see also Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at \*2 (Tex. App.—Austin Nov. 21, 2008, no pet.) ("[T]he rules of appellate procedure do not require the use of magic words to preserve error."). To the contrary, to preserve error a party need only "state[ ] the grounds for the ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1.

Here, after Mr. Washington raised the admissibility of character evidence under Texas Rule of Evidence 404(a)(1)(B), the Commission responded by attempting to distinguish Mr. Washington's cited authority. At that point, Mr. Washington offered an alternative basis for admission of the evidence, saying:

> I think the Bar opened the door to [evidence of Mr. Washington's truthful character] by **attempting to impeach Mr. Washington that he was lying** and he was making claims and allegations referencing that set of facts.

(4 RR 216:22-:25) (emphasis added).

This alternative basis explicitly focused on the credibility attacks that Mr. Washington endured *on the stand*, not the substantive allegations against him. By saying that the Commission's *impeachment* opened the door

30

to character evidence, his counsel plainly presented to the Court an alternative basis for character evidence that differed from that asserted under Rule 404(a)(1)(B).

This interpretation is further supported by the fact that the Court had already sustained the Commission's objection to admission of the evidence under Rule 404(a)(1)(B) when Mr. Washington's counsel pressed for admission of the evidence on the alternative ground of Mr. Washington's impeachment. Specifically, after the Commission argued that Mr. Washington's cited authorities were not "applicable to the case-in-chief of this case at all since we're not dealing with anything involving moral turpitude," the Court responded "Right." (4 RR 216:3-:8). After the Commission then further explained its position, Mr. Washington's counsel offered the *alternative basis* that the Commission had opened the door through "impeach[ment] of Mr. Washington that he was lying and he was making claims and allegations referencing that set of facts." (4 RR 216:22-:25).

Though the Commission appears to contend that this statement merely further asserted an argument for introduction of the evidence under 404(a)(1)(b), seeking to introduce good character evidence based upon

*impeachment* is an invocation of Rule 608(a). Rule 608(a) provides for the admission of good character evidence whenever the witness's credibility has been "attacked." *See* Tex. R. Evid. 608(a) ("[E]vidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.").

But acts like impeachment, cross-examination, and insinuations that a witness is "lying" and "making claims and allegations" provide no basis whatsoever to admit character evidence under Rule 404(a)(1)(B). Indeed, Rule 404(a)(1)(B) applies only when "a party [in a civil case is] *accused* of conduct involving moral turpitude" (emphasis added). The Commission's impeachment of Mr. Washington on the stand and insinuation that he was falsely testifying could never alter the underlying conduct of which the Commission *accused* him.

Thus, prior impeachment cannot be characterized as an argument for admitting evidence under Rule 404(a)(1)(B). Indeed, if Mr. Washington's trial counsel had never mentioned Rule 404(a)(1)(B), but had simply said— as he did following the Rule 404(a)(1)(B) discussion—"the Bar opened the door to [good character for truthfulness evidence] by attempting to impeach Mr. Washington that he was lying and he was making claims and

allegations referencing that set of facts" (4 RR 216:22-25), no one could colorably argue that this statement raised Rule 404(a)(1)(B). Everyone would agree that this statement referred—as it did in this case—to rehabilitation under Rule 608(a).

Counsel's impeachment statement has nothing whatsoever to do with the substantive allegations against Mr. Washington that opened the door under 404(a)(1)(B). Instead, it focuses exclusively on the attack that his credibility sustained over the course of his examination. In making this statement, Mr. Washington thus identified a fact that rendered character evidence admissible under Rule 608(a), but was completely irrelevant to the analysis under 404(a)(1)(B).

It also bears note that the testimony Mr. Washington sought to introduce—"testimony about Mr. Washington's character and reputation for truth and veracity, honesty and plain dealing" (*see* 4 RR 228:14-:24)— was admissible both under Rule 404(a)(1)(B) and under Rule 608(a). Character for truthfulness not only directly addressed the Commission's moral turpitude allegations, but also served to bolster Mr. Washington's credibility as a witness. The evidence was thus cross-admissible for both

33

purposes, further evidencing that counsel's statement raised both bases for admission.

Mr. Washington's interpretation of his counsel's statement thus renders the statement a sensible, timely, and relevant objection. The Commission's, by contrast, renders it an irrelevant sidebar. This Court's obligation to liberally construe objections to avoid waiver supports Mr. Washington's interpretation that the statement preserved Rule 608(a)'s invocation. *See Arkoma Basin Exploration Co., Inc. v. FMF Associates 1990-A, Ltd.*, 249 S.W.3d 380, 388 (Tex. 2008) ("Like all other procedural rules, those regarding the specificity of post-trial objections should be construed liberally so that the right to appeal is not lost unnecessarily.").

For all of these reasons, counsel's statement cannot be understood as further argument that the trial court should admit the evidence under Rule 404(a)(1)(B)—an argument that the trial court had already rejected. Instead, the statement must be understood as what it was, an invocation of the alternative justification for admitting character evidence. The Commission had attacked Mr. Washington's character for truthfulness, opening the door under Rule 608(a). Mr. Washington's counsel "stated the grounds for [admitting character evidence under Rule 608] . . . with sufficient specificity

to make the trial court aware of the complaint." *See* Tex. R. App. P. 33.1. Mr. Washington preserved this basis for admitting the evidence, and the trial court erred in excluding the use of the evidence for this purpose. This Court should therefore consider the harm of excluding the evidence that resulted from the jury's misimpression about Mr. Washington's character for truthfulness as well as in the context of the specific allegation of deceit.

## VI. MR. WASHINGTON STANDS ON HIS PRIOR BRIEFING WITH REGARD TO HIS REMAINING ARGUMENTS.

In response to the Commission's other arguments, and without waiving any points raised in his initial brief, Mr. Washington stands on his initial briefing.

## Prayer

Craig A. Washington asks this Court to reverse the trial court's judgment and grant him a new trial along with any other relief to which he has shown himself entitled.

Respectfully submitted,

*/s/ Michael A. Stafford*

| | |
|---|---|
| Michael A. Stafford | Gardere Wynne Sewell LLP |
|    Texas Bar No. 18996970 | 1000 Louisiana, Suite 2000 |
|    mstafford@gardere.com | Houston, Texas 77002 |
| Katharine D. David | Tel: 713.276.5500 |
|    Texas Bar No. 24045749 | Fax: 713.276.5555 |
|    kdavid@gardere.com | |
| Stacy R. Obenhaus | COUNSEL FOR APPELLANT |
|    Texas Bar No. 15161570 | CRAIG A. WASHINGTON |
|    sobenhaus@gardere.com | |
| John MacVane | |
|    Texas Bar No. 24085444 | |
|    jmacvane@gardere.com | |

## Certificate of Service

I certify that this document was served on the following counsel on November 19, 2015, through this court's electronic filing/service system:

Cynthia Canfield Hamilton
Office of the Chief Disciplinary Counsel
State Bar of Texas
Post Office Box 12487
Austin, Texas 78711
chamilton@texasbar.com

*/s/ John MacVane*
John MacVane

## Certificate of Compliance

I certify that this document contains 5,509 words, apart from those parts of the brief excluded by Texas Rule of Appellate Procedure 9.4(i)(1). I relied on the computer program used to prepare the document to determine the number of words.

*/s/ John MacVane*
John MacVane

Gardere01 - 7261905v.5