

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-16-00306-CR
07-16-00307-CR
07-16-00308-CR
07-16-00309-CR
07-16-00310-CR

JOSEPH CHARLES CAMPA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 31st District Court
Gray County, Texas
Trial Court Nos. 9718, 9719, 9720, 9721, 9722  Honorable Steven R. Emmert, Presiding

June 28, 2018

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant, Joseph Charles Campa, appeals from his five convictions by jury of the felony offenses of continuous sexual abuse of a child under the age of 14,[1] prohibited

---

[1] TEX. PENAL CODE ANN. § 21.02 (West 2018).

sexual conduct,[2] and sexual assault of a child[3] and the resulting consecutive sentences of life imprisonment for the continuous sexual abuse of a child conviction[4] and twenty years of imprisonment for each of the remaining four convictions.[5] He raises three points of error. We will affirm the judgments of the trial court.

## Background

Appellant, sixty-one years old at the time of trial, is the adoptive father of the victim, M.C., seventeen years old at trial. Some three years before trial, M.C. told her close friend that her father had been engaging in sexual conduct with her. Her friend told a police officer at their junior high school what M.C. had related. That afternoon officers took M.C. to the child advocacy center. There, M.C. was interviewed by a forensic interviewer and was examined by a sexual assault nurse examiner. Many of the acts M.C. described in her interview occurred when she was staying with appellant in a travel trailer he kept in a town in which he worked.

After appellant's arrest, he was indicted for one count of continuous sexual abuse of a child under the age of 14, one count of prohibited sexual conduct, and three counts

---

[2] TEX. PENAL CODE ANN. § 25.02 (West 2018).

[3] TEX. PENAL CODE ANN. § 21.011 (West 2018).

[4] This is a first-degree offense, punishable by imprisonment for any term of not more than 99 years or less than five years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2018).

[5] Appellant was convicted of one count of prohibited sexual conduct and three counts of sexual assault of a child. These convictions are second-degree felony offenses, punishable by imprisonment for any term of not more than 20 years or less than 2 years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.33 (West 2018).

of sexual assault with a child.  At trial of the charges, appellant pled not guilty to each charge, and the State presented several witnesses, including M.C.  It also introduced, without objection, the recording and a transcript of M.C.'s forensic interview.  Through that evidence, the jury heard M.C.'s version of events.  She described incidents, spanning several years, in which appellant engaged in various acts of sexual conduct with her.  Appellant testified, denying each of M.C.'s allegations and offering explanations why M.C. falsely accused him.

The jury found appellant guilty as charged on each count.  After a punishment hearing where neither the State nor appellant offered further evidence, the jury assessed punishment as noted.  Thereafter, appellant filed a motion for new trial.  The motion was overruled by operation of law and this appeal followed.

Analysis

Denial of Motion for Continuance

In appellant's first point of error, he contends the trial court erred when it denied his third motion for continuance, which asserted he wished to retain counsel of his choice before proceeding to trial.  We will overrule the contention.

Appellant argues the trial court erroneously deprived him of the assistance of his chosen counsel.  In making his argument, appellant relies on several cases, including *Gonzalez v. State,* 117 S.W.3d 831, 837-38 (Tex. Crim. App. 2003).  There, in addressing the disqualification of an attorney, the court acknowledged that "[t]he Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel.  The right to assistance of counsel contemplates

3

the defendant's right to obtain assistance from counsel of the defendant's choosing. However, the defendant's right to counsel of choice is not absolute. A defendant has no right to . . . an attorney he cannot afford or who declines to represent him . . . . Additionally, while there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id.* (citations omitted). But, "when a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation." *Id.* (citation omitted).

Granting or denying a motion for continuance is within the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion. *Greene v. State*, 124 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citation omitted). In deciding whether to grant or deny a motion for continuance to retain chosen counsel, a court may weigh factors including the following: (1) the length of delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay is for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of legal representation actually provided. *Id.* (citing *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982)). Under an abuse of discretion standard, we are to determine whether the trial court

reasonably could have balanced the factors and "concluded that the fair and efficient administration of justice weighed more heavily than appellant's right to counsel of his choice." *Greene*, 124 S.W.3d at 794 (citations omitted).

Applying these factors to the case before us, we find some might weigh in favor of granting the motion for continuance but most weigh in favor of denial.

The record reveals this to be a case of some complexity. That factor cuts both ways. It is to be desired that a defendant have counsel in whom he has confidence before undergoing trial of serious charges, but trial may be delayed significantly if counsel of choice will require much time to prepare.

The record also shows this case was delayed for more than two years for several reasons, some relating to the State's requests and others relating to appellant's issues with his attorneys. This factor might weigh slightly in favor of granting the motion because not all delays were at appellant's request.

We think, however, the remaining factors weigh in favor of the trial court's decision to deny appellant's motion for continuance.

First, appellant waited until the morning of trial to request the continuance to retain new counsel. That morning, appellant told the court he had secured funds to retain a particular attorney. The record indicates the court earlier had attempted to appoint that particular attorney for appellant, but the attorney declined the appointment.[6] The record

---

[6] The State argues this fact is especially significant because that attorney represented appellant on other charges in another county.

also shows that the attorney prepared to try the case was the third attorney the court had appointed for appellant. During the year before trial, appellant had expressed complaints over his appointed counsel's representation. Appellant thus had ample time to secure alternative legal representation. Because he did not, his appointed counsel spent time preparing for trial and arrived on the trial date ready to try the case. Delaying the case further would have caused waste of judicial resources and inconvenienced the court, the attorneys, the witnesses, and the jurors.

Second, the trial court had before it only appellant's assertions concerning retained counsel. The court had no information confirming that appellant had the means to retain counsel. Nothing indicates the court had been contacted by the prospective attorney regarding the case. *Compare United States v. Gonzalez-Lopez,* 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) and *Wheat v. United States,* 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (in each case, the attorney wishing to represent the defendant contacted the court).

Third, appellant failed to indicate to the court the length of the continuance he required to complete the retaining of counsel, whether the counsel he wished to retain was prepared to try the case, or, if not, how long it would take to prepare for trial with new counsel.

Lastly, the record contains no suggestion that the denial of the motion for continuance harmed appellant or that his appointed counsel failed to provide adequate legal representation.

6

Considering the factors as they apply to this case, we cannot say the trial court abused its discretion in denying appellant's third motion for continuance. We resolve appellant's first point of error against him.

Error in Admitting Testimony Relating to Truthfulness of the Victim

In his second point of error, appellant contends the trial court erred when it permitted the testimony of Lynn Jennings, Ph.D., a licensed professional counselor, concerning the truthfulness of children who make allegations of sexual assault.

A trial judge has wide discretion in the admission of evidence at trial. *Ryder v. State,* 514 S.W.3d 391, 398 (Tex. App.—Amarillo 2017, pet. ref'd) (citing *Druery v. State,* 225 S.W.3d 491, 502 (Tex. Crim. App. 2007); *Montgomery v. State,* 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990) (op. on reh'g)). We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010)). Under an abuse of discretion standard, we do not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement. *Id.* (citation omitted). We will affirm the trial court's ruling if it was correct under any theory of law applicable to the case. *Id.* (citing *State v. Esparza,* 413 S.W.3d 81, 82 (Tex. Crim. App. 2013)).

An expert witness may testify if her scientific, technical, or other specialized knowledge will assist the trier of fact to determine a fact issue. *Yount v. State,* 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (citing TEX. R. EVID. 702). However, the testimony of an expert witness must aid the trier of fact and not supplant its determination. *Schutz v. State,* 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). Expert witness testimony concerning

7

child sexual abuse "does not aid the trier of fact when it constitutes a direct opinion on the child victim's truthfulness and in essence, decides an ultimate fact issue for the trier of fact." *Hatter v. State,* No. 03-04-00359-CR, 2006 Tex. App. LEXIS 4516, at *11 (Tex. App.—Austin May 26, 2006, no pet.) (mem. op., not designated for publication) (citing *Yount*, 872 S.W.2d at 711-12). Thus, an expert witness may not give her opinion as to the testifying child's truthfulness. *Id.* (citations omitted).

In *Yount,* the Court of Criminal Appeals noted that "[a] number of courts faced with testimony as to the truthfulness of a *class* of persons to which the complainant belongs have concluded that such testimony is tantamount to direct testimony that the complainant would not lie." *Yount,* 872 S.W.2d at 711 (citations omitted) (emphasis in original). The court agreed with the courts in other jurisdictions, finding that an "expert who testifies that a class of persons to which the victim belongs is truthful is essentially telling the jury that they can believe the victim in the instant case as well." *Id.*

"Expert testimony that a particular class of persons to which the victim belongs is truthful is not expert testimony of the kind that will assist the jury, as is required by Texas Rule of Evidence 702, and is thus inadmissible." *Barshaw v. State,* 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (citing *Yount*, 872 S.W.2d at 711). Therefore, the State is not permitted to "elicit expert testimony that a particular child is telling the truth, or that child complainants as a class are worthy of belief." *Sandoval v. State,* 409 S.W.3d 259, 291 (Tex. App.—Austin 2013, no pet.) (citations omitted). And, an expert may not offer an opinion on the truthfulness of a child complainant's allegations. *Id.* (citing *Schutz*, 957 S.W.2d at 59). "Such testimony 'crosses the line' between evidence that will genuinely assist the jury and that which usurps the jury's function to judge the credibility of

witnesses." *Id.* (citations omitted). It is not experts, but rather jurors, who must draw "conclusions concerning the credibility of the parties in issue." *Id.* (citing *Yount*, 872 S.W.2d at 710).

The State called Jennings to testify during its case in chief, before M.C.'s testimony. Jennings testified, in response to a question from the prosecutor, that research from 2012 "shows that there's no evidence to support that [false allegations of child sexual abuse] are common. It's actually very uncommon that children just make up false allegations. It happens but it's uncommon." She further testified that she has "had maybe five or six [false allegations] out of 500" in her work with child victims of sexual abuse.[7]

Through its argument, the State seems to concede Jennings' testimony as to the truthfulness of child sexual abuse victims as a class is the type of testimony that *Yount* prohibits. The State contends, however, that appellant repeatedly attacked M.C.'s truthfulness at trial, as well as the truthfulness of child sexual abuse victims as a class, and Jennings's testimony was properly admitted for rehabilitation purposes.

We disagree. The State relies on *Michael v. State*, 235 S.W.3d 723 (Tex. Crim. App. 2007). "If a witness's general character for truthfulness has been attacked, Rule of Evidence 608(a) allows, for purposes of rehabilitation, the presentation of opinion or reputation evidence of that witness's good character for truthfulness." *Sandoval,* 409

---

[7] She told the jury also, with regard to false allegations, "if a child goes through the process that happens once an outcry like that is made and they're telling their story over and over, the likelihood of them being able to keep up that story is very slim." Appellant does not challenge that statement on appeal.

9

S.W.3d at 292 (citing TEX. R. EVID. 608(a)). The court in *Michael* set out a standard for trial courts to "determine whether an attack has occurred and if character evidence as to truthfulness should be permitted." *Michael,* 235 S.W.3d at 725. Under that standard, the court is to determine "whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel (e.g., during voir dire or opening statements)." *Id.* at 728. We will assume, without deciding, the State is correct that appellant's voir dire and questioning of witnesses brought into question M.C.'s general character for truthfulness so as to permit Jennings to offer opinion testimony of her truthful character.

Jennings's objectionable statements, however, did not speak to M.C.'s good character for truthfulness. Her statements that it is uncommon for children to make false allegations of sexual abuse, and that she had seen "maybe five or six . . . of 500" instead addressed M.C.'s specific allegations of sexual abuse, effectively asserting that child sexual abuse "complainants as a class are worthy of belief." *Sandoval,* 409 S.W.3d at 291. Her statements mirrored closely expert opinions *Yount* held inadmissible. *See Yount,* 872 S.W.2d at 712 (citing cases holding expert testimony that child sexual abuse victims rarely lie was inadmissible and such testimony that 99% of such victims are telling the truth also was inadmissible) (citations omitted). They were inadmissible. *See Yount,* 872 S.W.2d at 711-12; *Sandoval,* 409 S.W.3d at 292. *See also Fuller v. State,* 224 S.W.3d 823, 832-33 (Tex. App.—Texarkana 2007, no pet.) (counsel rendered ineffective assistance through failure to object to comparable testimony).

We must now consider whether the admission of the statements requires reversal. On appellate review, and pursuant to Texas Rule of Appellate Procedure 44.2(b), "a non-

constitutional error must be disregarded unless it affects the defendant's substantial rights." We do "not overturn a criminal conviction for non-constitutional error if, *after examining the record as a whole*, we have fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93 (citation omitted) (emphasis in original). In considering the potential to harm, the "focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. 'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id.* at 93-94. (citation omitted).

The "danger posed by the erroneous admission of expert testimony that was a direct comment on the complainant's credibility was that the jury could have allowed that testimony to supplant its decision." *Id.* (citation omitted). In assessing the likelihood that the jury's decision was improperly influenced, the appellate court must consider "everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instruction given by the trial judge, the state's theory, defensive theories, closing arguments, voir dire, and whether the state emphasized the error." *Id.* (citations omitted).

The record of this case shows that the subject of false allegations of child sexual abuse was introduced during voir dire. The State asked panel members about the

likelihood of false accusations of sexual assault. Addressing members one by one, the prosecutor asked them to assign a number from one to four to the likelihood, with "1 being very likely that you think that someone would falsely accuse, and then 2 being likely, 3 being unlikely and four being very unlikely that someone would falsely accuse someone else of sexual assault as a child."[8] During his voir dire, appellant's counsel asked panel members if their children had ever told something that was not true, asked reasons why children might do so, asked if members had seen media reports of false allegations of child sexual abuse, asked if children "stick to their story" even when confronted with the truth, emphasized the jury's duty to recognize a false allegation, asked whether jurors would be inclined to believe a child over an adult, and inquired about factors jurors would consider to determine a witness's truthfulness.

During the testimony, as appellant argues, M.C. testified the incidents of abuse occurred and he testified they did not. Appellant's defensive theory that M.C. fabricated the accusations, however, was not well developed at trial. Appellant gave relatively brief and thin testimony describing teenage behavioral issues with M.C., regarding such matters as her performance in school and in athletics, her attitudes toward her mother and her sister, and her dating contacts with boys. He testified she lied to him by telling him she had performed her running workout when she had not. He referred also to one occasion on which, he said, she was angry with him because he did not take her along when he went hunting. That event occurred the Friday before her outcry on Monday. Appellant's testimony concerning their relationship, however, gave the jury little reason to

---

[8] None of the sixty-nine panel members answered "1." Four of the panel members answered "2" and seven answered "4." The rest of the panel, fifty-eight members, answered "3." Each of the jurors seated to hear the case answered "3."

believe M.C. fabricated her allegations, in our judgment. Appellant also testified to medical conditions that he contended rendered him unable to perform some of the acts she described. But no other evidence addressed his asserted medical conditions. Moreover, the asserted conditions were not inconsistent with most of the acts M.C. recounted.

The jury heard M.C. testify to appellant's sexual abuse of her, and saw the recording of her forensic interview. Jurors also heard the SANE nurse read the history portion of her report, which described appellant's sexual acts. The nurse's written report also was in evidence. Appellant argued to the jury that M.C.'s allegations grew as she told her story to the forensic interviewer, then the SANE nurse, then on the witness stand. As evidence of fabrication, the argument is not persuasive. From our review of the entire record, we do not see any significant inconsistency between M.C.'s testimony and that of the interviewer and nurse.

If the jury had disregarded strong evidence indicating that M.C. was lying about the sexual acts, Jennings's improperly admitted statements that children do not often make false accusations might be seen to have influenced jurors toward conviction. *See Barshaw*, 342 S.W.3d at 94 (harm analysis must include character of error and how it might be considered in connection with other evidence in the case). But that is not what this record reflects.

Further, Jennings's two statements that were erroneously admitted were a small part of her testimony. The bulk of her time on the stand was spent explaining the process of grooming and isolation that sex offenders often practice on their victims, and describing

how appellant's actions fit the pattern she described. Appellant acknowledges that testimony was properly allowed.

The SANE nurse testified her examination of M.C.'s hymen revealed three healed tears that could have resulted only from its penetration. Though she acknowledged she could not identify the means of penetration that caused the tears, she told the jury her examination was consistent with M.C.'s description of appellant's acts.

Witnesses who were present at the advocacy center testified to the telephone call his wife (M.C.'s mother) made to appellant after M.C.'s interview. They testified that a part of the conversation with appellant occurred over the phone's speaker, during which a law enforcement officer instructed him not to have contact with M.C. The witnesses testified also that appellant and his wife continued to converse after the speaker was deactivated, but those standing near still could hear what appellant was saying. Appellant was heard to say, more than once, that he was "going to go to jail for a long time." At trial, appellant offered an explanation of his statements but the jury could have seen such statements made at that early stage in the case as expressing appellant's consciousness of guilt.

The State made no mention of Jennings's testimony in its argument to the jury. Appellant's counsel referred to favorable statements from her testimony, but did not refer to her objectionable statements. The error in admission of her two statements was thus not emphasized before the jury.

"Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount

14

of evidence presented that the jury could have considered in assessing the victim's credibility." *Barshaw*, 342 S.W.3d at 96 (citation omitted). This is such a case. We cannot find, based on the entirety of the record, that the error in admitting Jennings's statements had a substantial or injurious effect or influence on the jury's verdicts.

We overrule appellant's second point of error.

Sufficiency of the Evidence to Support Appellant's Convictions

Appellant's third point of error is closely related to his second. The point of error is couched as a challenge to the sufficiency of the evidence to support his convictions, but in substance appellant's argument asserts that the admission of Jennings's statements addressed in his second point led to an improper verdict. His brief states that this third point of error and his second point are "inextricably intertwined."

By our disposition of his second point of error, we have rejected the contention that admission of Jennings's statements supporting the truthfulness of M.C.'s testimony had a substantial or injurious effect on the jury's verdicts. We will not re-examine that contention. We will address the sufficiency of the evidence to support the convictions.

Review on appeal of the sufficiency of the evidence supporting conviction must consider evidence that was improperly admitted, as well as that properly admitted. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Ryder*, 514 S.W.3d at 396. We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Ryder,* 514 S.W.3d at 396 (citing *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979);

15

*Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The jury is the "sole judge of a witness's credibility, and the weight to be given the testimony." *Id.* (citing *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West 2013); *Lee v. State,* 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.)).

Because our evaluation of the sufficiency of the evidence to support appellant's convictions must consider all of the evidence that was before the jury, even evidence that was improperly admitted, *Clayton*, 235 S.W.3d at 778, we cannot find the evidence insufficient simply because the trial court improperly allowed the jury to hear two statements from Jennings.

M.C. testified in detail about appellant's conduct leading to each of his convictions. Her testimony of each of the sexual acts alleged in the indictments alone is sufficient to support appellant's convictions. *Ryder,* 514 S.W.3d at 393. And we disagree with appellant's statement in his brief the jury's verdicts were based solely on her testimony. The jury also could have considered the other evidence we have noted, including the trauma found by the SANE examination, and appellant's statements on the day of the outcry. We note also that the general circumstances M.C. described in her testimony, that she often stayed with appellant alone in the travel trailer and slept in the bed with him, went unchallenged by appellant.

Under the requisite standard, considering all of the evidence whether properly or improperly admitted, and because the jury was free to believe some, all or none of the testimony of each witness, *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991), we find a rational jury could have concluded each of the indicted offenses was proven beyond a reasonable doubt. We resolve appellant's third point of error against him.

Conclusion

Having overruled each of appellant's points of error, we affirm the judgments of the trial court.

James T. Campbell
Justice

Do not publish.